BALBOA REALTY COMPANY, INC., Plaintiff, *v.* BRENGLASS REALTY CORPORATION and Others, Defendants.*

Supreme Court, Bronx County, May 18, 1932.

* Affd., 238 App. Div. ——.

*Hartman, Sheridan, Tekulsky & Pecora,* for the plaintiff.

*Horace G. Marks,* for defendant Brenglass Realty Corporation.

*William C. White,* for defendants Murphy, Inc., and James R. Murphy.

SHIENTAG, J. Plaintiff seeks to recover damages for fraud and deceit alleged to have been practiced in connection with the sale of a lot by the defendants, the owner and the auctioneer who sold it to the plaintiff. Plaintiff alleges that the auctioneer represented that lot 40, the one in dispute, was a corner lot, whereas in fact it was not On the other hand, the auctioneer contends that he represented lot 40 to be a corner lot according to the city map, that no fraud was perpetrated by him, that there was no intention to deceive the plaintiff, and that in fact it was not deceived.

In order to recover plaintiff must establish that the defendants made the representations alleged, that such representations were false, and were known so to be, that they were made for the purpose of deceiving the plaintiff, that the plaintiff relied thereon, and that as a result of such representations the plaintiff was damaged. (*Reno* v. *Bull,* 226 N. Y. 546.) Plaintiff has to prove " representation, falsity, *scienter,* deception and injury." (*Ochs* v. *Woods,* 221 N. Y. 335.) So also it has been held that " One who falsely asserts a material fact, susceptible of accurate knowledge, to be true of his own knowledge, and thereby induces another to act upon the fact represented to his prejudice commits a fraud which will sustain an action for deceit." (*Kountze* v. *Kennedy,* 147 N. Y. 124, 130.) It is clear, however, that " negligence and fraud are not synonymous terms; nor in legal effect are they equivalent terms. Fraud presupposes a wilful purpose resorted to with intent to deprive another of his legal rights. It is positive in that the purpose concurs with the act, designedly and knowingly committed. Negligence,

whatever be its grade, does not include a purpose to do a wrongful act. It may be some evidence of, but is not fraud." (*Reno* v. *Bull, supra,* 551.) (See, also, *Marsh* v. *Falker,* 40 N. Y. 562.)

Fraud must be established by clear, positive and convincing evidence. (*Karpas* v. *Brussel,* 217 App. Div. 550, 554.) " Fraud cannot be presumed. It must be proven, and if there is left room for the inference of an honest intent, the proof of fraud is wanting." (*Bernheimer* v. *Rindskopf,* 116 N. Y. 428, 436.)

There was a sharp conflict in the testimony as to what transpired at the time of the sale. I find from the evidence that although lot 40 was represented to be a corner lot no fraud was practiced by either the auctioneer or the owner of the plottage. The testimony in the case and subsequent events confirm this conclusion; the documentary evidence fortifies it.

The president of the plaintiff corporation was an experienced real estate dealer. His representative and agent, a Mr. Kelly, was likewise an experienced real estate operator. They were both present at the auction sale and the bidding was done by the latter. When the plottage was sold they had in their possession the auctioneer's maps and the owner's maps. Plaintiff's Exhibit 4, the owner's map of Beverly Hills, was approved by the city authorities. The certification of map signed by Leonard C. Smith, city surveyor, recited, among other things, as follows: " * * * the lines of the streets and avenues shown on this map agree with the lines of the streets and avenues shown on the tentative and final maps of the City of New York." The city map showed that lot 40 was a corner lot. The topographical bureau, county of Queens, wrote to the defendant Brenglass Corporation advising it that lot 40 was a corner lot on the city plan. (Defendant Brenglass' Exhibit 6.) Proceedings to widen Little Neck road had progressed and condemnation proceedings had been instituted. The conclusion seems to be irresistible that whatever representations were made, and were acted upon, were in the light of the city's plans and in the belief that those plans would be carried to completion.

Between the date of sale and the closing of title Mr. Dillon, president of plaintiff, wrote to the defendant auctioneer as follows: " Kindly verify in your reply that the City has taken over the strip in front of Lot 40, Block 13, which you mentioned as a corner at the beginning of the sale. This will be of value to me in taking title so as I may demand same to be in my deed." The defendant auctioneer replied as follows: " With regard to Lot 40, Block 13, which you also requested some information on, the attorney for the owners, Mr. Samuel Kahan, has again assured me that this lot is a corner. Nevertheless, I would suggest that you personally

communicate with him and request that he make notation in the deed or contract which he will have ready at the time of closing." Subsequently Mr. Kelly, the representative of the plaintiff, wrote to the auctioneer and likewise sought information as to whether or not lot 40 was a corner lot. In reply to that letter the auctioneer repeated what had been written to Mr. Dillon and in addition added the following: " or you might get in touch with L. C. Smith, the surveyor who made the map, and he will assure you that it is a corner."

As suggested by these letters, a representation was inserted in the deed to the effect that lot 40 was a corner lot according to the city map, the deed was accepted by plaintiff and the balance of the purchase price paid over.

Considering all these facts I am not convinced that the defendants intended to deceive the plaintiff. A reading of the entire record demonstrates that plaintiff understood the nature of its bargain and that the defendants were not actuated by any bad faith.

In view of the determination reached, it becomes unnecessary to consider whether or not plaintiff was actually damaged by the representations. It may be mentioned, however, that according to the testimony of plaintiff's expert the entire property purchased by plaintiff at the sale (including the lot in controversy) is worth more than the sum paid by it.

In so far, therefore, as the defendant auctioneer is concerned, a verdict must be directed in his behalf. With respect to the other defendant, Brenglass Realty Corporation, the same conclusion must follow. The state of facts which exonerated the auctioneer applies with equal force to the defendant owner. They show that a fraudulent intent was wanting.

Verdict is accordingly directed in its favor. Ten days' stay of execution; thirty days to make a case.